Henry G. Bender v. Commissioner. Clair C. Loudon v. Commissioner.
Henry G. Bender v. Commissioner
Docket Nos. 9694, 9695.
United States Tax Court
1947 Tax Ct. Memo LEXIS 238; 6 T.C.M. (CCH) 421; T.C.M. (RIA) 47108; April 23, 1947
*238 John D. Wortman, Esq., for the petitioner. L. R. Bloomenthal, Esq., for the respondent. HARLAN Memorandum Findings of Fact and Opinion HARLAN, Judge: These cases were consolidated for trial. They involve deficiencies in income tax liability for the taxable year ended December 31, 1941, as follows: Henry G. Bender
$3,088.53
Clair C. Loudon
2,189.24
These taxpayers filed their income tax returns with the collector of internal revenue for the 18th district of Ohio at Cleveland. The question involved is: Did the Commissioner properly increase the distributive shares of income of the respective petitioners from the Bender & Loudon Motor Freight, a copartnership? In determining the income of said partnership for the taxable year 1941, did the Commissioner properly disallow: (a) A deduction of $4,284.00 representing alleged compensation paid to Mrs. Elizabeth Bender and Mrs. Dessie Loudon? (b) A deduction claimed by the partnership in the amount of $3,148.61 representing alleged or excessive rent paid to the B & L Realty Company? A second question involving the propriety of the disallowance by the Commissioner of bad debt deductions in the amount *239 of $674.54 out of a total claimed in Item 16 of the 1941 income tax return of Henry G. Bender, in the amount of $874.54; also the propriety of the disallowance of an additional bad debt deduction in the amount of $1,718.66 not previously claimed on said return, was originally involved in this proceeding. However, during the trial counsel for the petitioner conceded that the Commissioner's determination on the question of bad debts was correct. Therefore, at this time it is our finding that the disallowance of said claimed bad debt deductions is sustained. Findings of Fact Petitioners Henry G. Bender and Clair C. Loudon were, in the calendar year 1941, partners conducting a trucking business known as Bender & Loudon Motor Freight, said partnership having been organized in 1933. B. & L. Realty Company, throughout the calendar year 1941, was an Ohio corporation organized for the purpose of holding title to real estate and renting and leasing the same. It owned dock and warehouse facilities suitable for use and occupancy by those engaged in motor freight business in Akron and Cleveland, Ohio, and Jackson, Michigan. Its officers, together with their compensation, were: Clair C. Loudon, president
$ 100.00
Mrs. Dessie Loudon, vice-
president
2,300.00
Mrs. Elizabeth Bender, secre-
tary
2,300.00
Henry G. Bender, treasurer
100.00
*240 The above officers owned all of the stock of the corporation and their duties were nominal. Eighty per cent of the revenue received by said corporation came from Bender and Loudon Motor Freight and twenty per cent from other users of the dock facilities. The balance sheet of B. & L. Realty Company as of December 31, 1941, was as follows: ASSETS
LIABILITIES
The Goodyear State Bank
$ 183.50
Taxes Accrued
$ 716.12
Land
21,084.83
Common Capital Stock
45,500.00
Land Appurtenances
393.23
Reserve for Deprec.-Buildings
3,358.80
Buildings
27,664.74
Prepaid Insurance
119.57
Earned Surplus (Deficit)
129.05
$49,574.92
$49,574.92
INCOME AND EXPENSE INCOME
EXPENSE
Rental Income
$8,681.67
Depreciation of Buildings
$1,520.00
Real Estate Taxes
1,046.96
Insurance on Buildings
98.28
Buildings Repairs and Maintenance
1,087.01
Social Security Taxes - Pensions
48.00
Social Security Taxes - Unemployment Compn.
Inc.
129.60
Capital Stock Tax
62.50
Franchise Tax
45.34
Salaries of Officers
4,800.00
Income Tax Expense
36.73
Loss in Operations
192.75
$8,874.42
$8,874.42
CASH RECORD *241 RECEIPTS
DISBURSEMENTS
Rents
$ 8,681.67
Construction Contract - Akron
Dock
$ 900.00
Construction Contract - Cleve.
Dock
3,034.00
Salaries
4,800.00
Repairs
1,087.01
Insurance
37.36
Capital Stock Tax
62.50
Real Estate Taxes
782.17
Franchise Tax
45.34
Social Security Taxes
177.60
Income Tax (1940)
36.73
$10,962.71
Balance on Hand 12/31/40
2,464.54
Receipts - 1941
8,681.67
Total
$11,146.21
Disbursements - 1941
10,962.71
Balance on Hand - 12/31/41
$ 183.50
Henry G. Bender operated the Cleveland dock terminal and Clair C. Loudon operated the Akron terminal. Both partners supervised the other dock terminals rented by the partnership which, in addition to the three rented from B. & L. Realty Company, also included a terminal at Detroit and one at Kalamazoo, Michigan. The Akron dock terminal was built in 1940 and both the Akron and Cleveland terminals were of the most modern type and well located. They both contained a cross plan dock which greatly facilitated the loading, handling and transshipment of merchandise. They both also contained adequate and modern office facilities. *242 The Jackson terminal was a frame building having three large doors with office and sleeping quarters. Dock terminals are subjected to extremely rough usage due to the heavy weight of the commodities handled and the frequently severe bumps which the loaded trucks occasion in backing up to the dock. They suffer a relatively high rate of depreciation and maintenance cost. When the docks owned by the B. & L. Realty Company were constructed, docking facilities in convenient locations in the three cities involved were very scarce and difficult to obtain. Bender & Loudon Motor Freight, in 1941, expended for rent $9,689.50, of which $7,550 was paid to B. & L. Realty Company. In 1941 the rental market for modern dock and warehouse facilities suitable for motor freight use in Akron and Cleveland, Ohio, and Jackson, Michigan, was such that tenants of such facilities dealing at arms-length with landlords, neither party being under compulsion, would have been required under normal conditions to pay, a rental return of sixteen per cent of the capital invested in the rented dock and warehouse facilities. In 1941 the partnership did a gross volume of business of $600,000 to $700,000 of which *243 fourteen per cent represented profit. This business represented a large increase over previous years. From the formation of the partnership up to 1941 the wives of the two partners had consistently worked to promote the success of the partnership. In the earlier years when there were few employees the respective wives devoted more time and effort than during the taxable year involved. Mrs. Bender had a background of teaching and clerking. She assisted her husband at the Cleveland Office in all types of general office work. She had no regular hours at the office but came and left as she pleased. She also did some work at home on records of which no time record was kept. Her working time at the office averaged one and one-half working days a week. She had three children, one of whom was born in 1941. Mrs. Loudon had a background of clerical work for the Pennsylvania Railroad and she had operated a small coal sales business. She was capable of doing general office work and had assisted her husband loyally in his early years in the trucking business. On one occasion she had driven a truck on a long distance haul. During 1941 she worked about one third of the work week as an average. *244 She also did some indeterminate work at home. Both women were socially active in the promotion of their husband's business, attended conventions and were generally helpful. The amounts paid to Mrs. Bender and Mrs. Loudon, approximating $41 per week each, were not paid to them as compensation for any services rendered prior to 1941. Opinion The Commissioner in his ninety-day letter rejected a portion of the deduction which Bender & Loudon Motor Freight claimed as rental payments in the following terms: There has also been disallowed a deduction in the amount of $3,148.61 representing excessive rent paid to the B. & L. Realty Company. It will be noted that the Commissioner did not find that the rental payment made by Bender & Loudon Motor Freight was in fact a payment made for something other than rent, nor does the Commissioner find that the taxpayers would not have been required to pay the rentals which were actually paid on a free and open rental market. At the trial of this case the subject of rental values was discussed by three experts, two for the petitioner and one for the respondent. One of these experts, who fixed the highest rental value on the Cleveland and Akron *245 terminals, admitted that he wholly ignored the investment in a rental property in fixing its rental market. He based his opinion wholly on the locality of the property, the nature of its construction, the availability of competing property, and the suitability of the property for the use of the tenant. His determination was based solely upon supply and demand and he fixed a rental value as that amount which a landlord could force a tenant to give. The elasticity of his system is represented by the fact that he testified that the Cleveland terminal should bring a rental of from $300 to $325 a month. Within a few minutes on cross examination, when asked again for a fair rental value of the Cleveland terminal, he said: "I think I put in a figure around $425 to $450." A second expert subordinated all factors affecting real estate in computing a fair rental value to the amount which the landlord had invested in the property. He stated that if two adjacent and comparable properties had been purchased, one at a bargain and the other at a high price, the landlord owning the cheaper property should get a less rental return than the landlord who made a more unfortunate purchase. It was his *246 opinion that a gross rent return of ten per cent of the amount invested, with a six per cent net, would constitute a fair rental value. The third expert, who spent many years in an active real estate business involving rentals and purchases, based his opinion of rental value on the suitability of the property for its contemplated use, the nature of its construction, and the availability of similar accomodations. However, he also took into consideration as a minor factor the amount invested in the property. It was his opinion that property used for motor freight dock and warehouse purposes had a short rental life, approximately ten years, that four per cent of the rental should be allocated to repairs and depreciation, and that a sixteen per cent rental return on an open market would constitute a fair rental return for such property, and particularly the property owned by B. & L. Realty Company in this case. The Court was impressed with the testimony of this witness and from that testimony, as well as all of the testimony in the case and the provision of the ninety-day letter, it is our finding that the rental herein charged by the B. & L. Realty Company to Bender & Loudon Motor *247 Freight was not excessive and was such an amount as a landlord dealing at arm's length with a tenant, neither of them being under compulsion, might reasonably require the tenant to pay for the privilege of occupying the premises involved. See Stanley Imerman, 7 T.C. 1030 [Dec. 15,429]. On the question of the allowance of compensation to Mrs. Bender and Mrs. Loudon for services rendered to the partnership, it is unquestionably true that both of these women rendered services of some value to their husbands in the partnership business, particularly in confidential matters pertaining to other employees, bonuses, etc. which could not well be delegated to someone else. However, the B. & L. Realty Company was owned by the same two families who owned the Bender & Loudon Motor Freight. The B. & L. Realty Co. served these two families by making the handling of real estate more convenient under a corporate ownership. However, the evidence in this case is clear that other than holding the title to the real estate, the B. & L. Realty Company rendered no service. Mrs. Loudon and Mrs. Bender, as officers of that corporation, rendered no service, or at least only nominal services *248 such as attending board meetings if any were called, and for that service they received together $4,600 a year. This money came to the B. & L. Realty Company as rental from Bender & Loudon Motor Freight. It was very much to the personal interest of both Mrs. Bender and Mrs. Loudon to promote the success of Bender & Loudon Motor Freight, not only to secure their own family income, but to secure compensation which they each received for rendering no services to the B. & L. Realty Company. Furthermore, it is obvious from the evidence in this case that these two ladies had rendered considerably more service in the years prior to 1941 than they did in 1941, and they rendered that service without any expectancy of reward. It was done solely as a fulfillment of a family obligation to promote the welfare of the family interest in the partnership. The only difference disclosed in the record between 1941 and the prior years which would affect the payment of a salary is that in 1941 the income of the partnership experienced an unprecedented growth and the Court is convinced that the impact of the income tax law on this unexpected growth in partnership income was a very controlling factor in *249 the sudden payment of wages to Mrs. Loudon and Mrs. Bender. It is worthy of comment also that neither Mrs. Bender nor Mrs. Loudon testified as to any services that they rendered. The nature of their services also is reflected in the testimony of Charles Conger, who was Mrs.Bender's brother and who was also an employee of the partnership: Q. * * * Mr. Bender and his wife and Mr. Loudon and his wife were intensely interested in the success of this business, weren't they? A. Very much so. I could probably go further. I recall when the business was first started that they lent them financial assistance. Q. Was that money repaid, do you know? A. I believe so. * * *
Q. It was really just the sort of an interest a wife would take in her husband's business, wasn't it? A. That's right. From all of the above testimony and evidence we are persuaded that the salaries paid Mrs. Loudon and Mrs. Bender for services outside of and beyond the assistance which any wife would, under normal conditions, render to her husband for her own benefit in the welfare of her family, are unreasonably large and unnecessary to the partnership business. It is our conclusion that a weekly wage of *250 $12.50 a piece to Mrs. Loudon and Mrs. Bender, measured on the wage scale in effect with Bender and Loudon in 1941, would reasonably compensate these women for their services to the partnership, in addition to the services which they rendered as wives of the respective partners. Decision will be entered under Rule 50.